UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JAY WINEGARD, on behalf of himself and
all others similarly situated,

                    Plaintiff,

              - against -

GOLFTEC INTELLECTUAL PROPERTY
LLC, and GOLFTEC ENTERPRISES LLC,

                    Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-1244 (BMC)

**COGAN**, District Judge.

    Plaintiff, a deaf individual, brings this putative class action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and corresponding provisions of state law, seeking injunctive relief and damages principally because defendants' website does not have closed captioning. Using cookie-cutter complaints similar to the one in this case, plaintiff has brought 49 ADA cases in this district against other companies. Defendants here have moved to dismiss on several grounds, one of which the Court raised itself – namely, whether plaintiff has standing under Article III of the Constitution. Based on the Second Circuit's decision in Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68 (2d Cir. 2022), I conclude that plaintiff lacks standing.

## SUMMARY OF COMPLAINT AND PROCEDURAL BACKGROUND

    Plaintiff, a resident of Queens, alleges that defendants run a website offering instructional golf videos. He asserts that he would like to "learn about" the services that defendants offer. Specifically, he claims he would like to watch certain videos on defendants' website but is unable to do so because the videos have no closed captioning.

The only arguably non-conclusory allegations in the complaint concerning plaintiff's attempts to access defendants' website and his intent to do so in the future, with reference to the paragraph in the complaint where they appear, are as follows:

1. The Plaintiff in this matter was on the Defendants' Website in order to watch videos on the day of February 6, 2023 and subsequent days. However, due to access barriers, the Plaintiff could not watch the content on the Website, and Plaintiff and Class Members will continue to be unable to watch video content on the website. . . . The Plaintiff and Class members intend to revisit the Website for content and information about the flagship military program, golf lessons and improvement, custom golf club fitting, skytrak and other training video content.

22. The Plaintiff attempted to watch various videos to learn about the flagship military program, golf lessons and improvement, custom golf club fitting, skytrak on www.golftec.com including but not limited to "Buyers Guide. Launch Monitor Skytrak", "Buyer's Guide. Launch Monitor Foresight GC3" and "Listen to long drive World Record holder "Lynn Ray" talk about Warriors Pro Distance golf balls", "What is a Custom Golf Club Fitting", "Your improvements starts here", "PGA HOPE (Helping Our Patriots Everywhere)" but was unable to do so due to their lack of closed captioning. Plaintiff and Class members cannot watch videos on the Website and have been prevented from accessing the Website although they would like to and intend to visit the Website in February, March and in the future and enjoy video content as non-deaf individuals can and do.

45. The Plaintiff in this matter was on the Defendants' Website in order to watch videos on the day of February 6, 2023 in addition to subsequent days. The Plaintiff attempted to watch various videos to learn about the flagship military program, golf lessons and improvement, custom golf club fitting, skytrak on www.golftec.com including but not limited to "Buyers Guide. Launch Monitor Skytrak," "Buyer's Guide. Launch Monitor Foresight GC3" and "Listen to long drive World Record holder "Lynn Ray" talk about Warriors Pro Distance golf balls", "What is a Custom Golf Club Fitting", "Your improvements starts here", "PGA HOPE (Helping Our Patriots Everywhere)" amongst other videos but was unable to do so due to their lack of closed captioning. Plaintiff and Class members cannot watch videos on the Website and have been prevented from accessing the Website although they would like to and intend to visit the Website later in February and March and in the future and enjoy video content as non-deaf individuals can and do.

After reviewing the complaint, this Court ordered plaintiff to show cause why this action should not be dismissed for lack of standing, citing Calcano. Plaintiff timely responded to the

Order to Show Cause, and six days later, defendants moved to dismiss the case on standing and other grounds, to which plaintiff has also responded.

## DISCUSSION

### I. Standing

Boiled down from the 396 words arguably addressed to standing in the complaint quoted above, plaintiff's standing allegation is essentially this: On February 6, 2023, and on subsequent days, he visited defendants' website but could not access the videos because they lacked closed captioning. He intends to return to the website in the future to watch videos if closed captioning is added.

I cannot distinguish this perfunctory allegation from the allegations that the Second Circuit held inadequate in Calcano. That was a consolidated appeal involving five cookie-cutter ADA complaints in which each vision-impaired plaintiff sued various retailers for not selling braille gift cards. The sole standing allegations in the complaints were quoted by the Second Circuit as follows:

> The complaints identically allege that each Plaintiff "telephoned Defendant's customer service office in an attempt to purchase a store gift card from the Defendant and inquired if Defendant sold store gift cards containing Braille." Plaintiffs were "informed," however, that Defendants "do not sell store gift cards containing Braille." Moreover, Defendants failed to "offer any alternative auxiliary aids or services with respect to the gift cards."
>
> Plaintiffs state that they live ["in close proximity to"] their respective Defendants' stores and have been customers "on prior occasions." Plaintiffs also claim that they "intend to immediately purchase at least one store gift card from the Defendants as soon as the Defendants sell store gift cards that are accessible to the blind."

Calcano, 36 F.4th at 72-73 (cleaned up).

3

In affirming dismissal by the district court, the Court of Appeals refused to characterize these allegations as "factual" in assessing whether the plaintiffs had plausibly alleged standing. Id. at 76. The Court acknowledged that the plaintiffs were attempting to "parrot" the Second Circuit's language in an earlier case, Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188 (2d Cir. 2013), but explained that Kreisler was referring to the *categories* of facts that must be alleged, whereas the Calcano plaintiffs' allegations were "nothing more than legal conclusions couched as factual allegations." Calcano, 36 F. 4th at 76 (cleaned up); see also, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). Such allegations, the Court held, did not raise a reasonable inference of injury. Nor did the plaintiff's claims of "proximity" and "prior visits" to the defendants' stores, which the Second Circuit deemed "vague, lacking in support, and [insufficient to] plausibly establish that Plaintiffs 'intended to return to the subject location.'" Id. (citing Kreisler, 731 F.3d at 188); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992) (plaintiffs' "profession of an intent to return to the places they had visited before . . . do[es] not support a finding of the 'actual or imminent' injury that our cases require.") (cleaned up).

It's true that Calcano is a brick-and-mortar case and the instant case deals with website access, but if anything, that makes the allegations here even less sufficient. When assessing the plausibility of a plaintiff's purported "intent to return" to a place of public accommodation, courts examine factors such as (1) the proximity of the defendant's business to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the frequency of plaintiff's travel near the defendant's business. Calcano, 36 F.4th at 74. But proximity is not probative of actual injury in website cases because everyone's computer is proximate. Plaintiff never claims to have patronized

4

defendants' centers and indeed, only visited defendants' website on February 6, ten days before filing this lawsuit. The claim that he also visited on "subsequent days" is not particularized enough to be plausible. The definitiveness of plaintiff's "intent to return" is indiscernible; he merely parrots the legal standard. And the "frequency of plaintiff's travel near the defendant's business" is simply a carry-over from plaintiff's counsel brick-and-mortar template; it makes no sense in the website context.

To find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites (possibly after being referred to them by their non-sensory-impaired lawyer), and bring 50 lawsuits. Standing requires more.

If plaintiff really wants to watch golf videos rather than bring lawsuits, this would not have been a hard problem to fix. The Court is not going to suggest what would be adequate allegations, but he could have set forth his golfing experience or what inspired him to start learning now; named other golf instruction websites that he has successfully visited or noted prior golf lessons he has taken; listed some of the courses he has played; or any other facts that show he is, or, perhaps, wants to be a golfer. Anything like that would be far more useful in establishing standing than the pages and pages of hornbook law and citations about the purposes and legislative history of the ADA – something that invariably appears in this kind of complaint.

But it seems implausible that plaintiff can do even that. With 49 cases filed and counting, the range of his interests would have to be unusually substantial, ranging from industrial supplies to etiquette classes to robotics to freediving and spearfishing to instructions for assembling a "Nashville Hot Chicken" kit he didn't claim to have purchased. See Winegard v. W.W. Grainger, Inc., No. 20-cv-02191 (E.D.N.Y. May 14, 2020); Winegard v. Beaumont Etiquette, Llc, No. 20-cv-03146 (E.D.N.Y. July 15, 2020); Winegard v. Miso Robotics, Inc., No. 20-cv-

5

03354 (E.D.N.Y. July 27, 2020); Winegard v. PB Holdco LLC, No. 20-cv-05853 (E.D.N.Y. December 3, 2023); Winegard v. Goldbely Inc., No. 20-cv-04409 (E.D.N.Y. September 19, 2020). Where a "tester plaintiff discovers and is offended by ADA violations on a website, but that website has no actual, specific relevance to that particular plaintiff beyond the plaintiff's desire to seek out and remedy ADA violations, no concrete and particularized injury has been alleged." Laufer v. Dove Hess Holdings, No. 20-cv-00379, 2020 WL 7974268, at *11 (N.D.N.Y. Nov. 18, 2020).

The fact that plaintiff is a serial filer (a fact easily gleaned from public records) thus bears on the plausibility of his standing claim. The Second Circuit took note of it too in Calcano, refusing to "ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings" across "hundreds of substantively identical lawsuits;" that "identically allege[d]" the same essential claim. [cite]. Quoting the Supreme Court's holding in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Second Circuit concluded that "judicial experience and common sense suggest" that these complaints "are a result of their mass production," thereby rendering "each Plaintiff's cookie-cutter assertion of standing implausible." Calcano 36 F.4th at 77 (quoting Iqbal, 556 U.S. at 679).[1]

The ADA serves the important function of facilitating full participation in American life for those with disabilities. But it has also been a statute particularly subject to abuse. Having presided over dozens or hundreds of these cases (the filings have increased and are increasing at a staggering number), they almost always follow a disturbing pattern: A serial plaintiff, represented by one of a handful of lawyers, uses a form complaint that unnecessarily cites the

---

[1] Despite being specifically directed to Calcano in the Order to Show Cause and in defendants' motion to dismiss, plaintiff has not even cited Calcano, let alone tried to distinguish it, in his response to the order to show cause. He cites Kreisler but ignores the grounds on which Calcano distinguished Kreisler.

6

legal and policy goals of the ADA but contains few facts pertaining to the plaintiff. Although this Court sets initial conferences early on in the case, it is rare that such a conference ever occurs – the cases settle prior to the conference. It is extremely rare that the Court is ever advised of the terms of the settlement, which is odd because the ADA only provides for injunctive relief which the Court, presumably, would have to So Order as part of the settlement. The complaints almost always have a section of "class action allegations" although I've never had a class certification motion in any of them. (Besides, it only takes one plaintiff to get accessibility fixed at the business he's suing – there seems no need for a class action.) It is hard to avoid the conclusion that these cases, instead of achieving greater accessibility for disabled persons, instead settle for a nominal monetary recovery and what is likely an equally nominal attorney's fee without any involvement by the court.

If that is what's happening, it amounts to a perversion of the ADA's purpose and Congress's intent. "The Act was never intended to turn a lofty and salutary mission into a fee-generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case before it is either tried or settled. They do a disservice to the disabled, and to the vast majority of lawyers who carry out their duties under the ADA with skill, dedication, and professionalism." Brother v. Miami Hotel Investments, 341 F. Supp. 2d 1230, 1233 (S.D. Fla. 2004).

This issue is not unique to this district. "Indeed, a review of the case law shows similar litigation clogging district courts from Florida to California" to Texas. Deutsch v. Henry, 15-CV-1238, 2016 WL 7165993, at *21 (W.D. Tex. Dec. 7, 2016). I am not the first to describe this phenomenon as a "scheme of systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements" such that "the means for enforcing the ADA

(attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860, 864 (C.D. Cal. 2004); see also Chavez v. L2 Liu Inc., 20-cv-1388, 2021 WL 1146561, at *1 (E.D.N.Y. Feb. 26, 2021). The Ninth Circuit recently addressed this issue at length, noting that:

> Congress passed the [ADA] in order to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA satisfied the need for meaningful legislation for the protection of individuals with disabilities; however, one of the unforeseen consequences of this statute was the widespread abuse taking form due to the actions of serial ADA plaintiffs. . . . The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. Then, rather than simply informing a business of the violations, and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed. . . . Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter. . . . [P]re-suit settlements do not vest plaintiffs' counsel with an entitlement to attorney's fees, and [] the current ADA lawsuit binge is driven by the economics of attorney's fees.
>
> . . . .
>
> A hallmark of abusive ADA litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit. The ability to file essentially the same complaints over and over again, combined with the hope of intimidating the defendant into an early settlement (or of obtaining a default judgment), allows for a quick recovery of attorney's fees with relatively minimal difficulty.

Shayler v. 1310 PCH, LLC, 51 F.4th 1015, 1018 (9th Cir. 2022) (internal citations omitted). Other courts have called upon Congress to amend the statute to prevent the abuse. See, e.g., Steven Bro. v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) ("[T]he system for adjudicating disputes under the ADA cries out for a legislative solution. Only Congress can respond to vexatious litigation tactics that otherwise comply with its statutory frameworks."); Strojnik v. Driftwood Hosp. Mgt., No. 20-cv-00343, 2021 WL 50456, at *2 (D. Ariz. Jan. 6, 2021) ("Congress helped create a market for . . . vexatious ADA litigants" because the "ADA's incentive structure favors serial litigants.").

8

This kind of ADA litigation saps judicial resources, wastes attorneys' and litigants' time, and ultimately "mock[s] the statute's mission." Cankat v. 41st Ave. Rest., No. 15-cv-4963, 2016 WL 7217638, at *5 (E.D.N.Y. Dec. 12, 2016).  The limited resources of the federal courts need to be marshaled for resolving genuine disputes, not to provide a platform for extracting nuisance settlements that do little, if anything, to further the important goals of the ADA.

A nominal settlement value based on a defendant's exposure to attorneys' fees if it defends the case does not amount to an injury in fact – that value is an opportunity for the plaintiff and his attorney, not a loss.  "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021).

## CONCLUSION

Defendant's motion to dismiss for lack of standing is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       May 26, 2023

9